**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RACHEL JONES,<br>     **Plaintiff,** | **CIVIL ACTION** |
|   **v.** | |
| **CHILDREN'S HOSPITAL OF**<br>**PHILADELPHIA,**<br>     **Defendant.** | **NO. 17-5637** |

DuBois, J.                                                                                  June 26, 2019

<u>**M E M O R A N D U M**</u>

## I.  INTRODUCTION

In this employment discrimination case, plaintiff Rachel Jones alleges that defendant Children's Hospital of Philadelphia ("CHOP") failed to accommodate her pregnancy-related needs and ultimately terminated her on the basis of her pregnancy. Plaintiff asserts claims of pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 *et seq.*, and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code §§ 9-1101 *et seq.*; retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the PHRA, and the PFPO; and failure to accommodate under the PFPO. Presently before the Court is CHOP's Motion for Summary Judgment. For the reasons that follow, the Motion is granted in part and denied in part.

## II.  BACKGROUND

Plaintiff began her employment with CHOP as an orthopedic technician on August 31, 2015. Def. CHOP's Statement Mat. Undisputed Facts ("SUMF") ¶ 3. An employee's first 90 days at CHOP are a probationary period, meant to ensure that the employee "perform[s] to

[CHOP] standards." *Id.* ¶ 10. CHOP's policies provide, "If job performance, attendance, and other elements of job requirements satisfactorily meet the Hospital's standards (as evaluated by the employee's supervisor at the end of the introductory period)," then the employee's probationary period ends. *Id.* ¶ 11. An employee who is "unsatisfactory" during the probationary period "should be discharged." *Id.* ¶ 12. Plaintiff maintains that it was her understanding that "if there were any issues [during this period] they would be brought to [her] attention." See Pl. Resp. SUMF ¶ 10.

Joseph Monteleone supervised plaintiff. *See* SUMF ¶ 15; Pl. Resp. SUMF ¶ 15. Monteleone's direct supervisor was Sonja Joiner Jones. SUMF ¶ 17. Linda Pellegrino,[1] was the division manager for the CHOP orthopedics department and was responsible for, *inter alia*, onboarding new employees and managing timesheets. *See* SUMF ¶ 18; Pl. Resp. SUMF ¶ 18; Pl. Add. Mat. Facts ("PAMF") ¶ 1. Both Monteleone and Pellegrino worked out of CHOP's main campus, located in Philadelphia, Pennsylvania. SUMF ¶¶ 16, 21. Plaintiff worked primarily at CHOP's office in King of Prussia, Pennsylvania. *See id.* ¶ 3. On days plaintiff was scheduled to work in the King of Prussia location, she was the only orthopedic technician at that location. *Id.* ¶ 7.

Shortly after beginning her employment, plaintiff learned she was pregnant. PAMF ¶ 17. Plaintiff was terminated during her probationary period on November 6, 2015, after roughly two months of employment at CHOP. *See* SUMF ¶ 43. Plaintiff asserts that she was terminated on the basis of her pregnancy and because she requested accommodation for her pregnancy-related symptoms. Pl. Mem. Law Opp. Def. Mot. Summ. J. ("Pl. Resp.") 2. CHOP maintains that plaintiff was terminated because she was absent on four occasions during her probationary

---

[1] Pellegrino was not a CHOP employee during plaintiff's employment; she was employed by Children's Surgical Associates ("CSA"). SUMF ¶ 19. CHOP and CSA were "partners, affiliates" in caring for patients, and the two organizations subsequently merged. *Id.* ¶ 20; Pl. Resp. Ex. A, Pellegrino Dep. 14:4–6, 18:16–20.

period with CHOP and arrived late or departed early from work on roughly 30% of the days she reported to work. *See* Def. Mem. Law Supp. Def. Mot. Summ. J. ("Def. Mem. Mot.") 1; SUMF ¶ 28. The circumstances underlying these allegations are outlined below.

### A. Plaintiff's Pregnancy Announcement

Plaintiff learned she was pregnant on or about September 19, 2015. PAMF ¶ 17. On September 22, 2015, Pellegrino emailed plaintiff about assisting CHOP in moving to a new office. *Id.* ¶ 18. Shortly thereafter, plaintiff informed Pellegrino that she was pregnant and would not be able to engage in heavy lifting during the move. SUMF ¶ 22. Plaintiff testified that Pellegrino's response was, "Oh, okay," and that she did not congratulate plaintiff on her pregnancy. *See* PAMF ¶ 19; Pl. Resp. Ex. D, Jones Dep. 55:1–3. According to plaintiff, before she told Pellegrino she was pregnant, Pellegrino was "welcoming and friendly and warm and receptive" to her, but afterwards, Pellegrino stopped responding to plaintiff's communications and would not "say hi" to her. *See* Pl. Resp. SUMF ¶ 47.

Pellegrino later informed Monteleone that plaintiff was pregnant. *See* Pl. Resp. SUMF ¶ 25. Plaintiff also told Kristin Waller, who she reported to at CHOP's King of Prussia location, about her pregnancy. PAMF ¶¶ 10, 22.

### B. Plaintiff's Pregnancy-Related Symptoms & Requests for Timely Lunch Breaks

Plaintiff asserts that throughout much of her pregnancy she "suffered from severe 'morning sickness,' which caused nausea, stomach pains, and vomiting." *Id.* ¶ 23. She maintains that these symptoms were exacerbated when she could not eat lunch. *Id.*

Plaintiff states that the lunch break policy at CHOP's King of Prussia location required her to wait to be relieved by a medical assistant before she could take a break. *Id.* ¶ 25. She maintains that the medical assistants often failed to timely relieve her, causing her not to eat lunch until 3 or 4 p.m. *See id.* ¶¶ 25, 27. When plaintiff could not eat lunch at a regular time,

she maintains that she would become "dizzy and lightheaded and nauseous." *Id.* ¶ 27.

Plaintiff informed CHOP employees Waller and Samantha Brown, who managed the medical assistants, that her late lunches were making her sick due to her pregnancy and that she needed a timely lunch break. *See id.* ¶¶ 27–28. Plaintiff asserts that Waller told her to address the issues directly with her coworkers. *Id.* ¶ 29. Brown told Waller she would "work with her team to make sure that [plaintiff] had an earlier lunch break." *Id.* ¶ 30. Plaintiff contends that nothing was done to resolve this issue by Waller or Brown or anyone else. *Id.* ¶¶ 29, 31.

### C. Plaintiff's Arrival and Departure Times

Plaintiff arrived late to work or left early on 13 of the 44 days that she reported to work—almost 30% of her work days. SUMF ¶ 28. Plaintiff's timesheets show that she worked less than 8 hours on 10 of the 44 days she reported to work and more than 8 hours on 19 of those days. *Id.* ¶ 29; Pl. Resp. SUMF ¶¶ 28–29.

Plaintiff contends that some of these late arrivals and early departures were for her pregnancy-related symptoms. SUMF ¶ 27. To coworkers, plaintiff often cited traffic and train issues as the reasons for her lateness. *Id.* ¶ 33.

Plaintiff never asked to leave early, aside from one occasion in which she asked to leave to go to an ultrasound appointment. *Id.* ¶ 32; Pl. Resp. SUMF ¶ 32. Monteleone approved this request. SUMF ¶ 36 n.1. Plaintiff testified that no CHOP employee ever expressed any concern with her about her arrival and departure times. PAMF ¶ 55.

### D. Plaintiff's Absences

Plaintiff was absent on four occasions during her employment at CHOP. SUMF ¶ 26.

First, plaintiff was absent for "travel plans" on October 9 and 12, 2015. PAMF ¶¶ 3–4. These two absences were preapproved by Pellegrino at the time that plaintiff accepted her job offer, on July 20, 2015. *See* PAMF ¶ 5.

Second, plaintiff took two sick days for pregnancy-related reasons. *See* PAMF ¶ 38. Plaintiff contends that new hires were told during orientation that, despite the importance of attendance during the probationary period, if an employee is sick, they should not come to work because it could compromise patient health. *See id.* ¶ 9. Employees who wished to call in sick were instructed to call two hours before their shifts and leave a message for Pellegrino and either Monteleone or the "cast room supervisor." *Id.* ¶ 40.

Plaintiff's first pregnancy-related sick day was October 16, 2015. *Id.* ¶ 41. Before her shift, plaintiff left Pellegrino a voicemail stating that she would be absent because she had been "vomiting all night due to [her] pregnancy" and continued to vomit. Pl. Resp. SUMF ¶ 34; PAMF ¶ 41. Pellegrino did not respond to this voicemail and testified that she does not remember receiving it. PAMF ¶¶ 42, 44. Plaintiff's phone records reflect that she called. *Id.* ¶ 43. In addition, plaintiff emailed Joiner Jones that she would miss work due to "vomiting" on October 16, but she did not mention her pregnancy. SUMF ¶ 34.

Plaintiff's second pregnancy-related sick day was October 29, 2015. PAMF ¶ 43. That day, she left Pellegrino a voicemail stating that she was bleeding and needed to see a doctor to ensure she and the baby were healthy. *Id.* ¶¶ 43–44. Plaintiff also sent emails to both Pellegrino and Joiner Jones in which she advised them of that problem. *Id.* ¶ 44. Neither Pellegrino nor Joiner Jones responded to the emails. *Id.* ¶ 46. Both testified that they did not recall receiving these emails.[2] *Id.* Plaintiff also informed Waller, who recalled being informed that plaintiff would be absent due to pregnancy-related bleeding. *Id.* ¶ 48.

### E. Plaintiff's Termination

After plaintiff's second sick day, Pellegrino recommended a meeting with Monteleone

---

[2] Defense counsel stated that "[d]ue to a mistake," CHOP failed to maintain plaintiff's CHOP email files, so they could not be produced through eDiscovery software. *See* PAMF ¶ 47.

and Joiner Jones to discuss plaintiff's attendance.  *Id.* ¶ 56.  Monteleone testified that during this meeting, the group evaluated plaintiff's timesheets and agreed that plaintiff should be terminated based on her absences and her arrival and departure times.[3]  *See* SUMF ¶ 38; PAMF ¶ 56.  During the meeting, Monteleone told Pellegrino that plaintiff claimed Pellegrino had preapproved two of her absences.  *See* PAMF ¶¶ 32–34; Pl. Resp. Ex. F, Monteleone Dep. 44:8–9.  Pellegrino told Monteleone that she "didn't know anything about that."  *See* PAMF ¶ 34.  During her deposition, however, Pellegrino testified that she recalled approving those absences.  *Id.* ¶ 63.  She also testified that she did not remember telling Monteleone that she had not approved those two absences, though she "guess[ed]" it was accurate if he said so.  *Id.* ¶ 36.

Joiner Jones testified that she advised Monteleone and Pellegrino to meet with plaintiff before terminating her to "see if she can meet . . . [CHOP's] operational needs."  *Id.* ¶ 56.  She testified that it was CHOP's practice to discuss attendance issues with an employee before terminating them.  *Id.* ¶ 58.

Monteleone, Pellegrino, and Joiner Jones all testified that plaintiff's pregnancy was not discussed when deciding whether to terminate her.  SUMF ¶ 40.  Joiner Jones added that she was not aware that plaintiff was pregnant.  *Id.*

On November 2, 2015, Monteleone sent an email to Joiner Jones stating, "[Pellegrino] and I have decided to let [plaintiff] go, because of her Calling out sick on two different occasions in October.  Also, [plaintiff] told me she had let [Pellegrino] know about being off on Oct 9th and 12th.  [Pellegrino] said she didn't tell her anything about this before her hire.  So this is her fourth incident in the month of October."  PAMF ¶ 60; Pl. Resp. Ex. K.  Pellegrino was carbon copied on this email and did not respond.  *See* PAMF ¶ 62.  The email did not mention plaintiff's late arrival or early departure times.  *Id.* ¶ 61.

[3] Joiner Jones testified that she never saw plaintiff's timesheets.  PAMF ¶ 56.

Joiner Jones replied, "I understand and I agree," and told Monteleone to complete the appropriate form for terminating probationary employees. *Id.* ¶ 65. She instructed Monteleone to include "the number of days [plaintiff] has been absent – if they were excused or not" and "details of the discussions you all have had with [plaintiff] regarding time attendance." *Id.* She did not mention plaintiff's late arrival and early departure times. *Id.*

On the termination form, Monteleone wrote, "90 days probation, attendance issue, missed four days of work unexcused during probation." *Id.* ¶ 68. In a box on the form labeled "number of days late," Monteleone wrote a dash, rather than a number. *Id.* He testified that he "forgot" to put a number in this box. *Id.* ¶ 71. In addition, he did not mention any discussions with plaintiff. *See id.* ¶¶ 66–67. Plaintiff contends neither Pellegrino nor Monteleone met with her to discuss her attendance prior to her termination. *Id.* ¶ 59.

On November 6, 2015, Pellegrino and Monteleone terminated plaintiff. SUMF ¶ 43; PAMF ¶ 74. Plaintiff asserts that Pellegrino told her she was being terminated for "excessive absences." PAMF ¶ 74. Plaintiff avers that Pellegrino stated that the doctors and patients were happy with her work but "but due to the call-outs, we have to terminate you." *Id.* Pellegrino testified that she does not recall making these statements. *Id.* ¶ 75. Plaintiff claims that neither Pellegrino nor Monteleone mentioned her late arrival and early departure times. *Id.* ¶ 76.

On November 11, 2015, plaintiff emailed CHOP to inquire about her termination. *Id.* ¶ 77. Meghan Palomo, CHOP Senior Human Resources Business Partner, responded roughly two weeks later, stating CHOP "still feels that between the unexcused absences and the issues of tardiness that occurred along with it, that you did not successfully meet their expectations throughout the introductory period." *Id.* ¶ 78; Pl. Resp. Ex. P, at JONES 0006, 0010. Plaintiff replied, "I would like to know why 'tardiness' is being mentioned now. I was told I was being

terminated due to 'excessive absences.' No one ever mentioned this as a concern." PAMF ¶ 79.

### F. Procedural History

Plaintiff filed the Complaint on December 15, 2017, asserting claims of gender, pregnancy, and disability discrimination, retaliation, and failure to accommodate in violation of Title VII, the ADA, the PHRA, and the PFPO.

Fact discovery closed on October 9, 2018. On December 21, 2018, plaintiff filed a Motion to Reopen Discovery (Document No. 14), which CHOP responded to on January 4, 2019 (Document No. 15).

On January 11, 2019, CHOP filed the pending Motion for Summary Judgment (Document No. 16). Plaintiff responded to the Motion on February 8, 2019 (Document No. 20). CHOP filed a reply on February 19, 2019 (Document No. 23).

On March 8, 2019, following a telephone conference with the parties through counsel, the Court granted plaintiff's Motion to Reopen Discovery. The additional discovery required CHOP to produce "all time records for all probationary employees, supervised by Linda Pellegrino, who were employed by Children's Hospital of Philadelphia and Children's Surgical Associates for two (2) years prior to plaintiff's termination on November 6, 2015." The reopened discovery was completed on or before March 22, 2019.

The parties submitted a joint report in which they agreed to amend the Complaint by withdrawing and consolidating certain claims on April 1, 2019 (Document No. 27). The Court approved this amendment by Order dated April 2, 2019. The Amended Complaint contains three Counts: pregnancy discrimination in violation of Title VII, PHRA, and PFPO (Count I); retaliation in violation of the ADA, PHRA, and PFPO (Count II); and failure to accommodate in violation of the PFPO (Count III).

The Court conducted a telephone conference with counsel on May 29, 2019, to inquire

whether the additional discovery affected the pending Motion for Summary Judgment and its related briefings. In response, plaintiff's counsel advised that the additional discovery had no impact on the Motion. The Motion for Summary Judgment is ripe for decision.

## III.      LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## IV.      DISCUSSION

Plaintiff has three claims remaining: (1) pregnancy discrimination under Title VII, the PHRA, and the PFPO; (2) retaliation under the ADA, the PHRA, and the PFPO; and (3) failure to accommodate under the PFPO. For the reasons that follow, the Court grants CHOP's Motion

with respect to plaintiff's pregnancy discrimination and retaliation claims and denies the Motion with respect to plaintiff's failure to accommodate claim.

### A. Pregnancy Discrimination under Title VII, the PHRA, and the PFPO (Count I)

Plaintiff claims she was terminated on the basis of her pregnancy in violation of Title VII, the PHRA, and the PFPO. Pl. Resp. 2–3. CHOP argues that plaintiff was terminated not because of her pregnancy, but because of (1) four absences during her first two months of work and (2) late arrivals or early departures on 29.5% of the days she reported to work. Def. Mem. Mot. 7.

An employer violates Title VII in a pregnancy discrimination case when "an employee's pregnancy is a motivating factor for the employer's adverse employment decision." *See Rhett v. Carnegie Ctr. Assocs. (In re Carnegie Ctr. Assocs.)*, 129 F.3d 290, 294 (3d Cir. 1997). Discrimination claims under the PHRA and the PFPO are analyzed under the same framework as Title VII claims. *See Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) ("[T]he PHRA is applied in accordance with Title VII."); *Joseph v. Cont'l Airlines*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000) (noting PFPO claims "are analyzed in the same manner" as Title VII claims).

CHOP first argues that plaintiff conceded that she lacks evidence of discrimination during her deposition testimony and that based on this alone, summary judgment is warranted. Def. Mem. Mot. 8. In the alternative, CHOP argues that plaintiff has failed to adduce sufficient evidence from which a reasonable jury could conclude CHOP terminated her on the basis of her pregnancy. *See id.* at 6 & n.1.

For the reasons that follow, CHOP's Motion is granted with respect to plaintiff's pregnancy discrimination claims under Title VII, the PHRA, and the PFPO (Count I).

### i. *Plaintiff's Deposition Testimony*

CHOP argues that plaintiff "concede[d] that her discrimination case fails" during her

deposition testimony. Def. Mem. Mot. 8. Specifically, CHOP maintains that Monteleone was plaintiff's sole direct supervisor and that plaintiff could not identify any discriminatory action by Monteleone when asked during her deposition. *See id.*; SUMF ¶ 15.

Plaintiff maintains that Pellegrino—not Monteleone—harbored discriminatory animus toward plaintiff and orchestrated her termination due to her pregnancy. According to plaintiff, (1) Pellegrino was either a decisionmaker in terminating plaintiff, or (2) Pellegrino significantly influenced Monteleone in deciding to terminate plaintiff. *See* Pl. Resp. 16–17.

There is ample evidence from which a jury could find Pellegrino was a decisionmaker. Pellegrino called the meeting with Monteleone to discuss plaintiff's performance. In his email to Joiner Jones, Monteleone characterized the decision to terminate plaintiff as a joint decision, stating, "Linda [Pellegrino] and I have decided to let [plaintiff] go . . . ." *Id.* at 16; Pl. Resp. Ex. K. Plaintiff avers that Pellegrino did "all the talking" during her termination meeting. PAMF ¶ 74. Moreover, in the alternative, a jury could reasonably find that Pellegrino significantly influenced Monteleone in terminating plaintiff.

Thus, the Court rejects CHOP's argument that summary judgment is warranted because plaintiff did not point to any discriminatory conduct by Monteleone in her deposition testimony.

### ii. *Plaintiff's Evidence of Discrimination on the Basis of Her Pregnancy*

In the alternative, CHOP argues that plaintiff's evidence of pregnancy discrimination is insufficient to withstand its summary judgment motion. *See* Def. Mem. Mot. 6.

When there is no direct evidence of discrimination, as in this case, courts apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. If plaintiff succeeds, the burden shifts to the employer, who must articulate "some legitimate, nondiscriminatory reason" for the

adverse employment action.  *Id.*  Then, the burden shifts back to plaintiff to prove that the

employer's proffered reasons are a pretext for discrimination.  *Id.* at 804.  "The factfinder's

rejection of the employer's proffered, legitimate reason *permits*, but does not compel, a verdict

for the plaintiff."  *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  In other words, "if

the plaintiff has pointed to evidence sufficient[] to discredit the defendant's proffered reasons, to

survive summary judgment the plaintiff need not also come forward with additional evidence of

discrimination beyond his or her *prima facie* case."  *See id.* at 764.  The "plaintiff at all times

bears the 'ultimate burden of persuasion.'"  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

511 (1993).  CHOP contends that plaintiff has failed to meet her burden of proof.[4]  Def. Mem.

Mot. 6 & n.1.

The Court first turns to whether plaintiff has established a *prima facie* case.  To establish

a *prima facie* case of pregnancy discrimination, a plaintiff must show: (1) she was pregnant and

her employer knew, (2) she was qualified for the job, (3) she suffered an adverse employment

decision, and (4) a nexus exists between her pregnancy and the adverse employment decision

that raises an inference of discrimination.  *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365

(3d Cir. 2008).  Plaintiff must prove these elements by a preponderance of the evidence.  *Tex.

Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The purpose of the *prima facie*

case is to establish "evidence adequate to create an inference that an employment decision was

based on a discriminatory criterion illegal under the Act."  *See Int'l Bhd. of Teamsters v. United

States*, 431 U.S. 324, 358 (1977).

The first three prongs of the *prima facie* case are met in this case.  First, plaintiff was

pregnant and Pellegrino and Monteleone were aware that she was pregnant prior to her

---

[4] CHOP's primary contention is that plaintiff has failed to establish that the non-discriminatory proffered reasons for
her termination were pretextual.  *See* Def. Mem. Mot. 6.  However, CHOP also "disputes that Plaintiff could
establish a prima facie case of discrimination."  *Id.* at 6 n.1.

termination.  Pl. Resp. 6; Pl. Resp. Ex. A, Pellegrino Dep. 33:1–4; Pl. Resp. Ex. F, Monteleone

Dep. 28:4–16.  Second, plaintiff was qualified for the job.  Plaintiff contends that she received

positive performance reviews throughout her employment and that Pellegrino stated, at the time

she was terminated, that CHOP was otherwise pleased with her work.  Pl. Resp. 6; PAMF ¶¶ 16,

74.  Third, plaintiff's termination was an adverse employment action.  *See* SUMF ¶ 43; *Kargbo*

*v. Phila. Corp. for Aging*, 16 F. Supp. 3d 512, 522 (E.D. Pa. 2014).

      The Court next turns to whether plaintiff has shown a nexus between her pregnancy and

her termination that raises an inference of discrimination.  To establish a nexus, plaintiff must

show that "a similarly situated person outside of the protected class was treated more favorably,

or the circumstances of the adverse action give rise to the inference of discrimination."  *See*

*Oakley v. Orthopaedic Assocs. of Allentown, Ltd.*, 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010).

Plaintiff presents no evidence of similarly situated non-pregnant employees who were treated

differently than her.  Thus, plaintiff must show "circumstances" of her termination that "give rise

to the inference of discrimination" to establish this element.  *See id.*

      Plaintiff argues that Pellegrino harbored discriminatory animus toward her because of her

pregnancy and, as a result, she orchestrated plaintiff's termination by providing "incorrect and

incomplete information" about plaintiff, on which the decision to terminate her was based—false

information about approved absences.  *See* Pl. Resp. 8–9, 12–13.  In support of plaintiff's

assertion that Pellegrino possessed pregnancy-based discriminatory animus, plaintiff relies

primarily on her own testimony that Pellegrino's demeanor toward her changed after she

announced her pregnancy.  *See id.* at 7.  Specifically, plaintiff maintains that after she told

Pellegrino about her pregnancy, Pellegrino said, "Oh, okay" and became "stiff" and "curt" with

plaintiff.  *See* Pl. Resp. Ex. D, Jones Dep. 55:1–3, 56:9–11.  Thereafter, plaintiff claims that

where Pellegrino had previously been "welcoming and friendly and warm and receptive" to her, she then stopped responding to plaintiff's emails, phone calls, and text messages and would no longer say "hi" to plaintiff at work. *See* Pl. Resp. 9; Pl. Resp. Ex. D, Jones Dep. 54:18–56:18. Plaintiff also contends that CHOP "recognized birthdays" and on plaintiff's birthday, Pellegrino "walked right by me two or three times [and] never said a word to me." *See* Pl. Resp. Ex. D, Jones Dep. 55:13–22. When plaintiff called out sick for pregnancy-related complications, Pellegrino did not respond to her voicemails. *See* Pl. Resp. 7.

In addition, plaintiff asserts that Pellegrino's discriminatory animus toward plaintiff is shown in that she withheld information about plaintiff's absences from Monteleone. *See id.* at 12–13. First, Pellegrino did not inform Monteleone that plaintiff's two sick days were for pregnancy-related reasons. *See* Pl. Resp. 14–15. Plaintiff contends that Pellegrino was aware that her absences were pregnancy-related, because she left Pellegrino voicemails on each occasion. *See id.* Pellegrino testified that she never received those communications. *See* PAMF ¶¶ 42, 46. Second, Pellegrino testified that she remembered approving two of plaintiff's absences at the time that plaintiff accepted her job offer. Pl. Resp. 13; PAMF ¶ 63. However, Monteleone testified that when he asked Pellegrino if those absences had been approved, she told him she "didn't know anything about" them. *See* PAMF ¶ 34. Pellegrino testified that she "guess[ed]" she had told Monteleone that if he said so. *See id.* ¶ 36.

Plaintiff further contends that temporal proximity between her pregnancy announcement to Pellegrino in late September or early October 2015, her pregnancy-related absences on October 16 and 29, 2015, and CHOP's decision to terminate her on November 2, 2015, is evidence of a nexus. *See* Pl. Resp. 8; Pl. Resp. Ex. A, Pellegrino Dep. 33:1–24; *cf. Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (determining temporal proximity between

protected activity and adverse action was evidence of a causal nexus in the retaliation context).

Finally, plaintiff argues that the circumstances of her termination were unusual. For example, she argues that CHOP failed to follow its policy of discussing an issue with an employee before termination. *See* Pl. Resp. 18. In addition, she claims that she was terminated in part based on two sick days, despite the fact that CHOP told all new hires not to come in if they were sick. *See* Pl. Resp. SUMF ¶¶ 13–14. Finally, she points out that CHOP has provided shifting reasons for her termination, first asserting the termination was based on her four absences and later stating she was also terminated for arriving late or leaving early on about 30% of the days she reported to work. *See* Pl. Resp. 11–12 (emphasis added).

The Court concludes that viewing the record in the light most favorable to plaintiff, this evidence is insufficient to give rise to an inference of discrimination based on pregnancy. Plaintiff's testimony about Pellegrino's behavior does not include any specific discriminatory interaction, such as adverse comments about plaintiff's pregnancy. Instead, plaintiff describes an *absence* of interaction—failing to "say hi" to plaintiff, communicate with plaintiff, or wish plaintiff "happy birthday." However, plaintiff and Pellegrino primarily worked in two different CHOP locations. Def. Reply 8. When asked about the absence of interaction, plaintiff testified that she could not think of a reason for speaking with Pellegrino, other than to discuss her schedule. *See id.*; Pl. Resp. Ex. D, Jones Dep. 74:1–18. Plaintiff presents no evidence that Pellegrino discussed plaintiff's pregnancy when deciding to terminate her or on any other occasion. *See Weightman v. Bank of N.Y. Mellon Corp.*, 772 F. Supp. 2d 693, 704, 709–10 (W.D. Pa. 2011) (concluding supervisor's failure to "exhibit joy at the announcement" of plaintiff's pregnancy "*could* . . . satisfy the fourth element of [plaintiff's] *prima facie* case" when paired with the supervisor's comment that plaintiff needed to choose between her career and

motherhood). Plaintiff's evidence does not even rise to the level of "stray remarks," which the Third Circuit has consistently held are insufficient, "standing alone, [to] . . . give rise to an inference of discrimination." *See Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 368 (3d Cir. 2008).

Moreover, plaintiff's only evidence connecting the absence of interaction with Pellegrino to her pregnancy is timing: Pellegrino's alleged change in behavior occurred after plaintiff informed Pellegrino of her pregnancy, so plaintiff argues that it occurred because of her pregnancy. Without more, that evidence of timing is not so suggestive as to give rise to an inference of pregnancy discrimination. A reasonable factfinder could not conclude that Pellegrino's demeanor toward plaintiff changed because of her pregnancy, much less conclude that plaintiff's pregnancy then led to her termination.

Furthermore, Pellegrino's failure to inform Monteleone about the details of plaintiff's absences does not establish a nexus between plaintiff's pregnancy and her termination. First, even if Pellegrino was aware that plaintiff's two sick days were pregnancy-related, which she contends she was not, plaintiff has not explained why not telling Monteleone that those absences were pregnancy-related evinces discriminatory animus based on pregnancy. Moreover, plaintiff has not provided any evidence that pregnancy-related sick days should be treated differently than any other employee's sick days. *See Jones v. Hosp. of Univ. of Pa.*, No. 03-4938, 2004 WL 1773725, at *8 (E.D. Pa. Aug. 5, 2004) (explaining an employer is not required to "excuse a pregnant employee's absences if it would not excuse those of a non-pregnant employee"). Second, although a reasonable jury could conclude that Pellegrino acted with *personal* animus in failing to inform the other decisionmakers that she approved two of plaintiff's absences, this is insufficient to enable a reasonable jury to find a nexus between that failure to inform and plaintiff's pregnancy. *See Chase v. Frontier Commc'ns Corp.*, 361 F. Supp. 3d 423, 449 (M.D.

Pa. 2019) (concluding a reasonable jury could find *retaliatory* animus but not *discriminatory* animus where a coworker withheld information from the decisionmaker but no evidence suggested that the coworker harbored discriminatory bias). Plaintiff's arguments about unusual circumstances surrounding her termination—that CHOP failed to meet with her prior to her termination, fired plaintiff in part for taking two sick days even though it encouraged employees to take a sick day if necessary, and added her late arrivals and early departures as a reason for her termination after-the-fact—fail for the same reason: they do not establish a nexus to her *pregnancy*.

In sum, plaintiff's evidence is insufficient to establish a nexus between her pregnancy and her termination that gives rise to an inference of discrimination. Thus, plaintiff has not met her burden of establishing a *prima facie* case. Accordingly, the Court grants CHOP's Motion for Summary Judgment with respect to plaintiff's pregnancy discrimination claims under Title VII, the PHRA, and the PFPO (Count I).

### B. Retaliation under the ADA, the PHRA, and the PFPO (Count II)

Plaintiff contends that she was terminated in violation the ADA, PHRA, and PFPO for requesting accommodation for her pregnancy-related complications in the form of (1) time off and (2) timely lunch breaks. *See* Pl. Resp. 26.

Under the ADA, PHRA, and PFPO, pregnancy is not considered a disability, though complications arising from pregnancy may constitute disabilities. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(h) ("[A] pregnancy-related impairment that substantially limits a major life activity is a disability . . . ."); *Williams v. Pa. Hosp. of Univ. of Pa. Health Sys.*, No. 17-2413, 2018 WL 4491337, at *12 (E.D. Pa. Sept. 18, 2018) (explaining retaliation claims brought under the PHRA and PFPO are "subject to the same evaluation" as ADA retaliation claims). However, unlike an ADA discrimination claim, a retaliation claim under the ADA does not require a plaintiff to

prove that he or she has a disability within the ADA. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 n.2 (3d Cir. 2004). Instead, "a plaintiff need only show that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested." *Id.*

Retaliation claims under all three statutes utilize the *McDonnell Douglas* framework employed for Title VII retaliation claims. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (applying the Title VII framework to ADA retaliation claims); *Vanderveer v. Fedex Ground Package Sys., Inc.*, No. 16-1979, 2017 WL 467631, at *5 (E.D. Pa. Feb. 3, 2017) ("PHRA retaliation claims are analyzed under the same framework as retaliation claims under Title VII."); *Coleman v. Caritas*, No. 16-3652, 2017 WL 2423794, at *4 (E.D. Pa. June 2, 2017) (applying the same test for an ADA retaliation claim to a PFPO retaliation claim).

CHOP argues that plaintiff has failed to establish a *prima facie* case of retaliation. *See* Def. Reply 10. To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he or she engaged in a protected activity, (2) the employer took an adverse action against him or her, and (3) there is a causal link between the protected activity and the adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). For the reasons that follow, the Court concludes that, even assuming *arguendo* plaintiff had a "good faith belief" she was entitled to accommodation, she failed to establish a *prima facie* case.

### i. *Engaging in a Protected Activity*

CHOP argues that plaintiff did not engage in a protected activity. Def. Mem. Mot. 14. Plaintiff asserts that she engaged in protected activity in requesting an accommodation for her pregnancy-related symptoms. Pl. Resp. 26.

Requests for accommodations are protected activities under the ADA. *See Shellenberger v. Summit Bancorp*, 318 F.3d 183, 190 (3d Cir. 2003). In requesting an accommodation, an

employee "must make clear that [he or she] wants assistance for his or her disability." *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999). The employer must have "enough information" to know of the protected trait and the "desire for an accommodation," or "circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation. *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003).

First, plaintiff contends that the days she called in sick for pregnancy-related reasons constitute requests for an accommodation. *See* Pl. Resp. 26. Specifically, on October 16, 2015, plaintiff left Pellegrino a voicemail stating that she had been vomiting due to her pregnancy and needed to take the day off. PAMF ¶ 41. On October 29, 2015, plaintiff left Pellegrino a voicemail and emailed her stating that she was experiencing bleeding due to her pregnancy and needed to go to the doctor. *Id.* ¶¶ 43–44. The Court concludes that these two instances of calling in sick do not constitute requests for an accommodation. Plaintiff's two calls and the two sick days occurred roughly two weeks apart, for two dissimilar symptoms, and they were not followed by any other similar requests for time off. In short, plaintiff provides no explanation for why her calls should have put CHOP on notice that she needed an "accommodation" any more than a non-pregnant employee who called in sick. *See Torres v. Cty. of Berks*, No. 17-01890, 2018 WL 564406, at *6 (E.D. Pa. Jan. 26, 2018) ("[Plaintiff's] calling out sick cannot reasonably be construed as a request for an accommodation."); *Pizzo v. Lindenwold Bd. of Educ.*, No. 13-03633, 2015 WL 1471943, at *12 (D.N.J. Mar. 31, 2015) ("[Plaintiff] merely called in 'sick' . . . without any request that a reasonable juror could construe as a request for [an accommodation]."). Thus, plaintiff's two calls and the two sick days cannot serve as the basis for plaintiff's claim of retaliation for requesting an accommodation.

Next, plaintiff asserts that her requests for timely lunch breaks constitute requests for reasonable accommodation. *See* Pl. Resp. 26. Plaintiff avers that at CHOP's King of Prussia location she was required to wait until she could be relieved by another medical assistant before she could take her lunch breaks, which often did not occur until 3 or 4 p.m. *See id.* at 24. She contends that waiting so long to eat exacerbated her pregnancy-related symptoms and made her dizzy, lightheaded, and nauseous. *See id.* Plaintiff discussed this issue with Kristin Waller, to whom she reported at the King of Prussia location, and Samantha Brown, who managed the medical assistants at that location, and asked them to ensure she had a timely lunch break. *See id.* at 25.

The Court determines that plaintiff's request for a timely lunch break constituted a request for an accommodation. Waller and Brown had "enough information" to know of the protected trait and the need for an accommodation, having been informed by plaintiff that she was pregnant, about the symptoms she was experiencing due to her late lunch breaks, and about her desire for an earlier lunch break. *See Conneen*, 334 F.3d at 332. Thus, the Court concludes that plaintiff has sufficiently demonstrated that she engaged in a protected activity.

### ii. *Causal Link*

Given that CHOP's termination constitutes an adverse action, the Court turns to whether this adverse action was causally linked to plaintiff's request for timely lunch breaks. *See Moore*, 461 F.3d at 340–41. The Court concludes that plaintiff has not shown a causal link.

Plaintiff has adduced no evidence linking her requests for timely lunch breaks, which she made to Waller and Brown who work at CHOP's King of Prussia location, with her termination, which was decided by Pellegrino and Monteleone, who work at CHOP's Philadelphia location. She presents no evidence that Pellegrino and Monteleone were aware of her request. The temporal proximity between her request and termination—allegedly a few weeks apart—is

insufficient, standing alone, to show a causal link.  *See* Pl. Resp. 26–27; *see Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (emphasizing that temporal proximity "must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred").

Plaintiff has failed to establish a *prima facie* case of retaliation under the ADA, PHRA, and PFPO.  The Court thus grants CHOP's Motion with respect to Count II.

### C.  Failure to Accommodate under the PFPO (Count III)

Under the PFPO, it is unlawful "for an employer to fail to provide reasonable accommodations to an employee for needs related to pregnancy, childbirth, or a related medical condition, provided (i) the employee requests such accommodation and (ii) such accommodations will not cause an undue hardship to the employer."  Phila. Code § 9-1128(1). Courts typically apply the same framework used for ADA failure to accommodate claims to PFPO claims.  *See Matero v. Chipotle Mexican Grill, Inc.*, No. 17-5529, 2018 WL 4510494, at *1 (E.D. Pa. Sept. 20, 2018).  "Summary judgment may be granted for a defendant only 'in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly.'"  *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 284 (3d Cir. 2001) (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 670 (3d Cir. 1999)).

CHOP argues that it did not fail to accommodate any request made by plaintiff.  Def. Mem. Mot. 12.  Plaintiff contends that CHOP violated the PFPO by failing to accommodate her requests for (1) two sick days and (2) timely lunch breaks.  Pl. Resp. 24.

For the reasons stated *supra*, plaintiff's two instances of calling in sick do not constitute requests for an accommodation.  However, plaintiff's request for timely lunch breaks does constitute a request for an accommodation for her pregnancy-related symptoms of dizziness, lightheadedness, and nausea.  *See id.*

CHOP did not accommodate plaintiff's request for timely lunch breaks.  When she made

this request to Waller and Brown, Waller told her to address the issues directly with her coworkers, and Brown told Waller she would "work with her team to make sure that [plaintiff] had an earlier lunch break." PAMF ¶¶ 29–30. However, plaintiff contends that neither Waller nor Brown nor anyone else did anything to ensure plaintiff timely lunch breaks. *See* Pl. Resp. 25. CHOP argues that plaintiff's claim fails because she testified it was her understanding that Waller and Brown were trying to help her. Def. Reply 9–10. This argument is unavailing. It is unsurprising that plaintiff would testify that she understood that Waller and Brown were trying to help, given that that is what they said they would do. However, there is no evidence that Waller, Brown, or anyone else acted on this request. Thus, a reasonable jury could find that CHOP failed to accommodate plaintiff's lunch break request. A reasonable jury could further find that guaranteeing plaintiff an earlier lunch break would not have imposed an undue hardship on CHOP—indeed, allowing plaintiff to eat lunch earlier may not have imposed any hardship at all.

For these reasons, CHOP's Motion is denied with respect to Count III, which states a failure to accommodate claim under the PFPO.

### D. Supplemental Jurisdiction

The Court has dismissed all claims over which it has original jurisdiction. The only remaining claim—a claim for failure to accommodate—is based on a city ordinance, the PFPO. When a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining state law claims. 28 U.S.C. § 1367(c). The court's decision to continue exercising supplemental jurisdiction is discretionary. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

This Court will continue to exercise supplemental jurisdiction over the remaining claim in this case. It does so in the interest of judicial economy because, in the one and a half years the case has been on its docket, the Court has become familiar with the legal issues and the evidence

in the case.

## V. CONCLUSION

For the foregoing reasons, CHOP's Motion for Summary Judgment is granted with respect to plaintiff's claims of pregnancy discrimination under Title VII, the PHRA, and the PFPO (Count I) and retaliation under the ADA, the PHRA, and the PFPO (Count II) and denied with respect to plaintiff's claim of failure to accommodate under the PFPO (Count III). An appropriate Order follows.